The City of New Albany and Another *v.* Cook and Others.

The City of New Albany and Another *v.* Cook and Others.

MUNICIPAL CORPORATIONS.—STREET ASSESSMENTS.—Local assessments for street improvements in cities are authorized on the principal of the direct benefits resulting from the improvements to those upon whom they are made.

SAME.—Every property holder, and in some degree, every resident of the city, may be interested in all the improvements of a city; but those owning property on that part of a street to be improved are directly interested in, and benefited by, the improvement, whilst the common interest is remote; and hence it is deemed just and equitable to require those directly benefited, and whose property is enhanced in value by the improvement to bear the expense of making it.

SAME.—STATUTE OF INCORPORATION__CONSTRUCTION.—By section 65 of the act for the incorporation of cities, (Acts special session, 1865, p. 29,) the cost of the improvement of a street in a city is to be assessed upon the persons owning the lots or parts of lots fronting on the part of the street improved; the proportionate amount for which each person is liable, to be according to the number of front feet owned by him thereon; and where a lot is owned in distinct portions by two persons, the one owning the east half, which does not, and the other the west half, which does front on the street improved, the owner of the latter portion is alone liable to be assessed; and the fact that the division of the lot has not been plotted makes no difference.

APPEAL from the *Floyd* Circuit Court.

ELLIOTT, J.—Complaint for an injunction, filed by *Martha Cook, Sarah C. Cook* and *John T. Cook* against the city of *New Albany* and *George Gresham*, the treasurer of said city, to enjoin part of an assessment made by said city on the west half of lot 26, on *Upper Elm* street, for the improvement of *Upper Third* street, on which said half lot fronts. The court overruled a demurrer to the complaint, and, the defendants refusing to answer further, a final decree of injunction was rendered in accordance with the prayer of the complaint. The defendants excepted and appeal to this court.

The facts, as shown by the complaint, are these: Lot 26, described in the complaint, is a corner lot, having a

front of sixty feet, on the south, on *Upper Elm* street, and one hundred and twenty feet, on the west, on *Upper Third* street. The plaintiffs and their ancestors have been the owners in fee of the west half of said lot 26 since the year 1859, and are non-residents of said city.

In the year 1866, the common council of said city, with the concurrence of two-thirds of the members thereof, ordered a full improvement of that part of *Upper Third* street between *Elm* and *Oak* streets, in said city. The owners of the lots bordering thereon not having petitioned for said improvement. The expenses of said improvement were ordered to be paid by the owners of the lots bordering on that part of said street, in proportion to the number of front feet owned by them respectively. Lot 26 fronts on that part of said street so ordered to be improved.

The common council, having first advertised to receive proposals therefor, contracted for said improvement with *McKenna* and *Ormond*, they being the best bidders therefor. The work was fully performed and completed according to contract, and proper estimates thereof made, by which there was due to said contractors for said work, for the one hun-hundred and twenty feet front of said lot 26, which bordered on said improvement, the sum of $303 90—the whole of which sum was assessed by the city council against the plaintiffs, as the owners of the west half of said lot.

Lot 26 is designated on the original plat of said city as fronting sixty feet on *Elm* street, and extending north, the same width, one hundred and twenty feet. Prior to the order for the improvement of that part of *Upper Third* street, and ever since that time, one *George W. Dodson* was, and continues to be, the owner and in possession of the east half of said lot 26, and it is averred that there has never been any plotted subdivision of the lot. No assessment for said improvement was made against the owner of the east half of said lot. The plaintiffs, before the commencement of the suit, paid the contractors the sum of $151 95, being one-half of the amount of said assessment,

and claim that the other moiety should be assessed against the owner of the east half of said lot, and aver that it is benefited equally with the west half by said improvement. The plaintiffs refusing to pay the remaining amount due on said assessment, the city council caused a precept to issue for the collection thereof, which was placed in the hands of the defendant *Gresham*, the treasurer of said city, who was threatening to collect the same by a sale of the west half of said lot so owned by the plaintiffs.

The question presented in the case, and argued by counsel, involves the proper construction of certain provisions of the act of 1865, for the incorporation of cities  It is provided by section 65 of the act referred to, (Acts Spec. Sess. 1865, p 29,) that "when the owners of two-thirds of the whole line of lots, or parts of lots, (and measuring only the front line of such lots as belong to persons resident in such city) bordering on any street or alley, consisting of one whole square, between any two streets crossing the same, or if the common council deem it expedient, for any reasonable distance upon any square or alley, less than one whole square or block, shall petition the common council to have the sidewalks graded and paved, or the whole width of the street graded and paved, or for either kind of improvement, or for a full improvement in general, or for lighting such city according to the general plan of such improvement in said city, the common council may cause the same to be done by contract, given to the best bidder. after advertising to receive proposals therefor," &c.

"Sec. 66.  In all contracts specified in the last preceding section, the cost of any such improvement shall be estimated according to the whole length of the street or alley, or the part thereof to be improved, per running foot, and the city shall be liable to the contractors for so much thereof only as is occupied by public grounds of the city bordering thereon, and the owners of lots bordering on such streets or alleys, or the part thereof to be improved, shall be liable to the contractor for their proportion of the

cost, in the ratio of the first (front) line of the lots owned by them to the whole improved line : *Provided*, that when the owner of any lot shall have made any improvement in front of his lot in accordance with the general plan for the improvement of such street, and under the direction of the city engineer, he shall be entitled to a reasonable allowance therefor, upon his proportion of the cost of such improvement, which reasonable allowance shall be determined by the said engineer," &c.

Section 67 provides for estimates and payments on the work, from time to time, as it progresses; and further declares that "the common council, with the concurrence of two-thirds of the members thereof, may order or cause any or all of the improvements mentioned in the preceding section, and repairs of any kind of streets and alleys, to be made in like manner, without such petition, and either charge or cause any or all of the expenses thereof to be assessed and collected as hereinafter provided when petition is made, or, if it is deemed just and right by the common council, to cause such expenses, or any part thereof, to be paid out of the general revenue of the city."

By section 68 provision is made, in case of the non-payment of any assessment, for the issuing of a precept to the city treasurer, who is authorized to collect the amount due, by levy and sale of the lot, or parcel of ground, on which the assessment is made.

These local assessments are authorized on the principle of the direct benefits resulting to those upon whom they are made, from the improvements. Every property holder, and in some degree every resident of the city, may be interested in the improvement of all the streets of a city; but those owning property on that part of a street to be improved are directly interested in, and benefited by, the improvements, while the common interest is remote; and hence it is deemed just and equitable to require those directly benefited, and whose property is enhanced in value by the improvement, to bear the expense of making it.

Three modes have been adopted for ascertaining the amount or value of the benefits thus conferred, to govern the amount to be assessed on each person so interested. One is by the appointment of appraisers or commissioners to ascertain and assess the benefits to each person owning property in the immediate vicinity of, or along the line of, the part of the street to be improved; another is to assess the cost of the improvement upon the persons owning the lots or parts of lots fronting on the part of the street to be improved; the proportionate amount of each person liable, to be according to the number of front feet owned by him thereon; or it may be determined by the value of the property liable. The second is the mode adopted by the legislature in the sections of the statute to which reference has just been made. The language of section 66 is, "and the owners of lots bordering on such streets or alleys, or the part thereof to be improved, shall be liable to the contractor for their proportion of the cost, in the ratio of the front line of the lots owned by them to the whole improved line." Here, *Dodson*, the owner of the east half of lot 26, did not own any part of said lot fronting on *Upper Third* street; he was not the owner of any portion of the front line of said lot. He and the plaintiffs did not own the lot as tenants in common; he was the owner in severalty of the east half, and the plaintiffs of the west half of the lot. The fact that the division of the lot had not been plotted can make no difference; it was severed by the title of the parties, and the plaintiffs being the owners of the west half, owned the entire line thereof fronting on *Upper Third* street, and were therefore properly assessed with the improvement of so much of said street as that line represented. This construction of section 66, is in harmony with section 65, which only authorizes resident owners of lots, or parts of lots, bordering on the street or alley, to petition the common council for the improvement thereof; and it can scarcely be supposed that it was intended to assess residents whose lots or parts of lots do not border on the part of the street to be

improved, and at the same time deny them the right to become petitioners for such improvements. But, if the construction we have given to the statute can be considered as doubtful, there is another, and, to our minds, very satisfactory reason why it is a proper one, and clearly accords with the intention of the legislature. It will scarcely be contended that the owner of the part of a lot entirely off of, and excluded from the street, is as much benefited by the improvement of the street as the owner of the other part, fronting directly on it. That he is not, is a self-evident proposition. Yet no provision is made by the statute to apportion assessments in such cases. A provision so necessary to the end would certainly not have been overlooked, if the legislature had intended the assessments to be made on any others than the owners of lots, or parts of lots, fronting on the street, to improve which the assessment is made.

We think the court erred in overruling the demurrer.

The judgment is reversed, with costs, and the cause remanded, with directions to sustain the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.

GREGORY, J., being interested in the question involved, was absent.

*G. V. Howk, R. M. Weir*, and *J. V. Kelso*, for appellants.
*J. H. Stotsenburg* and *T. M. Brown*, for appellees.